LEMUEL CROSSMAN & another *vs.* CHARLES A. GRIGGS
& another.

Norfolk.    March 10, 1904. — June 24, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Equity Pleading and Practice*, Decree, Costs, Appeal.  *Trade Name.  Assign-
ment.  Equity Jurisdiction*, Equitable mortgage, Equitable attachment.

In a suit in equity an interlocutory decree for the plaintiff appealed from by the
defendant should be vacated in spite of the appeal when a final decree is entered
dismissing the bill.
Property in a trade name cannot be assigned in gross apart from the business which
it designates.
An agreement of a debtor with his creditor that in addition to other security named
he will not " sell, dispose of or exchange in any way " his interest in a certain
trade name without the consent in writing of the creditor is not an assignment
and does not create an equitable mortgage.  And the same is true of an agree-
ment that the debtor so long as his indebtedness continues " will not assign,
transfer, or sell " the trade name without the consent in writing of the creditor,
and that if a certain note is not paid at maturity he will assign and transfer the
trade name absolutely to any person named in a written demand of the creditor.
Where a bill is dismissed with costs, a defendant who on his own petition has been
admitted as a party erroneously is not entitled to costs.
Whether a debtor's interest in the good will of a business can be reached in a suit
of equitable attachment under R. L. c. 159, § 3, cl. 7, *quære.*
Under R. L. c. 159, § 19, an appeal from a final decree in equity stays all pro-
ceedings.

LORING, J.   Before May 15, 1894, the two plaintiffs, Lemuel
and Alfred H. Crossman, together with the defendant Griggs and

one George H. Bent, were copartners in the business of manufacturing and selling water crackers.· On or about May 15, 1894, the plaintiffs conveyed and assigned to Griggs their interest in the real and personal property of the firm, including the good will of the business and the right to use the name "G. H. Bent & Co." in connection therewith. Bent made a similar conveyance and assignment about the same time. The amount due the plaintiffs for this conveyance and assignment was $10,000. At that time the plaintiffs were indorsers on notes given in the partnership business, in the sum of $4,800. They agreed to continue their indorsements until the notes were taken up by Griggs or that sum was paid to them by him. These notes ultimately were taken up by the plaintiffs. On the same day, May 15, 1894, Griggs conveyed to the plaintiffs the land on which the bake shop was situated in which the business of the firm was carried on, and the plaintiffs gave Griggs a bond to reconvey the land conveyed upon payment of the $14,800 aforesaid, with interest at six per cent per annum. Also on the same day and as part of the same transaction, Griggs executed and delivered to the plaintiffs a paper in which after reciting ·the debt of $14,800, the deed, the bond and the fact that he was "the owner of the name or trademark of 'G. H. Bent & Co.' formerly owned by said Lemuel Crossman, A. H. Crossman, George H. Bent and myself doing business as G. H. Bent & Co.," Griggs agreed "in addition to the security above mentioned not to sell, dispose of or exchange in any way my interest in the name or trademark of 'G. H. Bent & Co.' without their consent in writing being first obtained until said sum of fourteen thousand eight hundred dollars shall be paid to said Lemuel and A. H. Crossman with interest."

On August 30, 1898, the plaintiffs brought a bill against Griggs alleging these facts, and on March 8, 1899, a decree was entered declaring that Griggs owed the plaintiffs $20,830.21, of which sum $17,470.80 was secured by an equitable mortgage upon the real estate, and "upon the name or trademark G. H. Bent & Co.," and the balance, $3,359.41, was unsecured, directing the real estate and the name and trademark to be sold as an entirety, and appointing a commissioner to conduct the sale. From this decree Griggs took an appeal

on March 10, 1899. On March 16, 1899, one Ewen R. Mc-
Pherson filed a petition in the above cause in the Superior
Court, alleging that Griggs was indebted to him in the sum of
$3,000, and that on May 17, 1894, he executed " an assignment
in pledge of the name or trademark ' G. H. Bent & Co.' ", that
the petitioner had " no knowledge of the alleged rights of the
plaintiffs in said name or trademark or of the proceedings in
said cause until after the final hearing " ; and praying that he
be admitted a party, that the " decree may be vacated or modi-
fied to protect " his rights in said name or trademark, and for
general relief.    Annexed to this petition is a paper in which it
is recited that Griggs is indebted to McPherson in the sum of
$3,000, that Griggs is " the owner of the name or trademark
' G. H. Bent & Co.' formerly belonging to Lemuel Crossman,
A. H. Crossman, George H. Bent, and myself doing business
under the firm name of G. H. Bent & Co., which firm is now
dissolved " ; and thereupon Griggs covenants with McPherson
" that so long as my said indebtedness to said E. R. McPherson
shall continue unpaid I will not assign, transfer, or sell said name
or trademark to any person or persons without having first ob-
tained the consent in writing of said E. R. McPherson.    And I
hereby further covenant that in case my said note shall not be
fully paid and discharged at maturity, four months after the
date thereof as aforesaid, then I will upon the written demand
of said E. R. McPherson assign and transfer said name or trade-
mark absolutely to any person or persons whom the said E. R.
McPherson shall designate in such written demand.    And it is
hereby agreed that in case of failure as aforesaid to discharge
the said note at maturity, then at any time after such failure the
said E. R. McPherson may assign his rights under and by virtue
of this instrument and the covenants by me therein contained
shall be binding upon me in the hands of such assignees."

On a motion filed by Griggs on April 20, an order was made
dated April 18, directing the commissioner to adjourn the sale
until further order of the court.    From this order the plaintiffs
appealed.    On May 2 the following order, dated April 29, 1899,
and indorsed on the back of McPherson's petition, was filed :
" The within named petitioner, Ewen R. McPherson, is hereby
admitted as a party to the above named cause."    From this

order the plaintiffs appealed.  On May 2, an order dated April 29, 1899, was filed, in which it is stated that the judge was of opinion " that the decree entered in this case March 8, 1899, so far affects the merits of the controversy that the matter ought to be determined by the Supreme Judicial Court before further proceedings are had thereunder ; it is therefore ordered, that all further proceedings thereunder be stayed pending the appeal of the defendants from said decree " ; and from this order an appeal was taken by the plaintiffs.

On May 8, 1899, the plaintiffs filed a bill of exceptions, which was allowed on June 9, 1899.  This stated exceptions to the order of April 20, 1899, adjourning the sale, and to the order of May 2, 1899, staying all further proceedings under the decree of March 8, 1899.  On December 4, 1899, a rescript was sent down by this court, "Appeal dismissed as prematurely entered."

On January 2, 1900, Griggs filed an answer to McPherson's petition, and a "decree" was entered January 4, 1900, in which McPherson was made a party defendant and ordered to answer the bill on or before January 19, 1900.  From this the plaintiffs appealed.  On January 19, 1900, McPherson filed a demurrer and answer ; on March 20 the plaintiffs filed motions to strike out this demurrer and answer, which motions were denied and the plaintiffs appealed.  Thereupon the plaintiffs joined issue and the case was heard on the merits.  The judge found that the real estate conveyed May 15, 1894, by Griggs was conveyed as security for payment of the $14,800, and that " as a part of the same transaction on May 15, 1894, the defendant Griggs executed the agreement set forth in Exhibit A' with reference to the sale, disposition or exchange of the name or trademark of ' G. H. Bent & Co.'  As I construe such last agreement, I rule as a matter of law that it conveys no interest in such trademark or name by grant or assignment or declaration of trust, to the plaintiffs.  It confers upon the plaintiffs no equitable lien.  I therefore rule that the plaintiffs have no claim as mortgagees, equitable or otherwise, in the trademark or name of ' G. H. Bent & Co.' "  The judge also found " that the real estate conveyed by the mortgage . . . was the land occupied and used in the business of G. H. Bent & Co. previous to May 15, 1894, but that such mortgage and agreement . . . did not expressly

or impliedly convey to the plaintiff the personal property, the business or the good will of the business.    Upon such construction of the mortgage under the decision of *Hallowell* v. *Ames*, 165 Mass. 123, as recognized in *Old Colony Trust Co.* v. *Great White Spirit Co.* 178 Mass. 92, I rule that this court has no jurisdiction in equity under the fourth prayer in the bill." He further made this finding: "It appears that in the agreement Exhibit A and the agreement of the defendant Griggs with the defendant McPherson, dated May 17, 1894, there has been no attempt expressly or by implication to convey to or declare a trust in favor of either the plaintiffs or McPherson in the business or the good will of the business of Griggs.    It is simply an agreement about the trademark or name of the business or the good will attached to the said name or trademark.    The agreement with McPherson of May 17, 1894, if not an assignment of the trademark, is in my opinion a declaration of trust in favor of the defendant McPherson, which might confer an equitable lien, if the trademark could be granted in gross without reference to any business to which it may be incident.    The plaintiffs as well as the defendant McPherson seem to claim an equitable attachment or an interest in the trademark apart from the business or the good will of the business or anything else which carries with it property in a trademark.    If trademarks and trade names are not as such, property, and cannot be transferred or alienated in any way, I must rule that the plaintiffs are not entitled to relief under the second prayer in the bill, if they claim thereby to enforce by sale an equitable attachment."

Thereupon a final decree was entered "that the plaintiffs' bill be dismissed with costs to both defendants."    From that decree the plaintiffs appeal.    The evidence was taken at both hearings by a commissioner, and is now before us.

The Superior Court seems to have treated as an interlocutory decree the decree of March 8, 1899, establishing two debts due to the plaintiffs, one secured and one unsecured; and establishing the existence of an equitable mortgage on the real estate and the trade name as security for the secured debt.    For that reason it seems to have been assumed that the appeal did not stay all proceedings under that decree, and also that it was open to that court to admit McPherson as a party in the cause in

spite of the appeal to the full court. This court seems to have assumed that McPherson had been admitted properly as a party, and for that reason that the appeal was prematurely entered here. After the rescript it was the duty of the Superior Court to deal with McPherson as a party. But if the decree of March 8, 1899, was an interlocutory decree, it should have been vacated in spite of the appeal, when the decree of December 14, 1903, was made dismissing the bill.

In the agreement with the plaintiffs dated May 15, 1894, and in that with McPherson dated May 16, both Griggs on the one hand and the plaintiffs and McPherson on the other hand seem to have assumed that " the name or trademark of G. H. Bent & Co." was property which could be assigned in gross. That was a mistake. The reasons are stated at length in *Chadwick* v. *Covell*, 151 Mass. 190, and need not be repeated here. See also *Covell* v. *Chadwick*, 153 Mass. 263; *Messer* v. *The Fadettes*, 168 Mass. 140.

The plaintiffs' contention is that an assignment of a trade name is a good assignment when it is coupled with a conveyance of the factory where the partnership business is carried on, and that in the case at bar the two were in fact one transaction. Whether that is so or not need not be considered, for Griggs, in the paper given by him to the plaintiffs, did no more than to agree not to sell, dispose of, or exchange in any way his interest in the name or trademark of G. H. Bent & Co. without the consent of the plaintiffs first being obtained. This is not in terms an assignment and is not in our opinion to be construed to mean more than its terms import. That disposes of the plaintiffs' argument as to his having an equitable mortgage in analogy to such a mortgage by deposit of title deeds.

In the agreement with McPherson there is an intention to assign the name or trademark but there is in terms no assignment of the good will of the business, and in our opinion that agreement also cannot be construed to mean more than its terms import. In our opinion it cannot be construed to be an implied assignment of the good will of the business. For that reason it gave McPherson no rights of property in the name or trademark in question. All that McPherson got was a right to bring an action of contract against Griggs for damages, in case Griggs broke his agreement.

For these reasons this bill so far as it is a bill to enforce an equitable mortgage to secure the debt of $17,470.80 must be dismissed.

By the final decree entered on December 14, 1903, the bill was dismissed with costs "to both defendants." In our opinion McPherson's petition to be admitted a party defendant should not have been granted, and, for that reason at least, he is not entitled to costs.

By the construction which we have given to the Griggs agreement delivered to McPherson, dated May 16, 1894, McPherson obtained no right of property in the name and trademark G. H. Bent & Co. All that he got was a right to recover damages against Griggs if Griggs broke his promise not to assign the name and trademark to another or if he broke his promise that he would assign it to McPherson or his assignee on a written demand being made upon him so to do. Whether McPherson's petition to be allowed to become a party defendant should or should not be granted depended upon his having a property interest in the name or trademark in question. If he had such an interest he had a right to be admitted a party defendant to protect that interest. If he had not a property interest in the name but only a right of action for damages for breach of a contract made with him by Griggs in case he did not get the trademark, he had no standing as a party defendant in a bill in which it is sought to have the trade name owned by Griggs applied in payment of a debt for which the plaintiff contends it was pledged, or in a bill in which it is sought to have it applied in payment of a debt for which it is not pledged as property which cannot be taken on execution at law. How far this bill is to be treated as a bill of the latter kind will be dealt with later on. The time for deciding whether McPherson did or did not have a property interest in the name was when his motion to be admitted a party defendant came on to be heard.

The plaintiffs have not argued that under the present bill the good will of the business of G. H. Bent & Co. can be reached and applied in payment of the plaintiffs' debt apart from the validity of their claim that the mortgage of the real estate and the agreement of May 15 constituted an equitable mortgage on the business. They have contended that out of the balance

of the proceeds of the sale of the real estate and trade name as an entirety made under the equitable mortgages of them, they are entitled to have their unsecured debt paid if there is a balance of those proceeds after the secured debt is paid out of them. It is not necessary to consider whether the plaintiffs could have the good will of this business sold and the proceeds applied to the payment of the debt due the plaintiffs apart from their having an equitable mortgage. In connection with which see *Walker* v. *Mottram,* 19 Ch. D. 355; *Cruttwell* v. *Lye,* 17 Ves. 335, and also *Moore* v. *Rawson,* 185 Mass. 264; *Hutchinson* v. *Nay,* 183 Mass. 355.

The only question presented by the bill of exceptions is whether further proceedings under the decree of March 8, 1899, should have been stayed. If that was a final decree, further proceedings were stayed by the appeal. R. L. c. 159, § 19. If not, it was proper that they should be stayed. The exceptions are for this reason immaterial.

The entry must be

> *Decree of March 8, 1899, vacated. Bill dismissed with costs to the defendant Griggs. Exceptions overruled.*

*G. R. Nutter,* (*J. B. Studley* with him,) for the plaintiffs.

*S. C. Darling & P. B. Runyan,* for the defendant Griggs, submitted a brief.

*W. A. Munroe,* for the defendant McPherson.

