**CLOVERLEAF RESTAURANTS INC., Plaintiff-Appellant, v. LENIHAN ET AL, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20328.  Decided December 30, 1946.

Robb & Robb, Cleveland, Friebolin & Byers, Cleveland, for Plaintiff-Appellant.

B. H. Schulist, Cleveland, Squire, Sanders & Dempsey, Cleveland, for Defendants-Appellees.

## OPINION

By HURD, J.

This is an action for injunction and relief whereby plaintiff-appellant seeks to restrain defendants-appellees from using the word "Pickwick" as a trade name in connection with the restaurant and liquor business operated by them at 11633 Clifton Boulevard in the City of Cleveland.  (The parties will hereafter be designated as plaintiff and defendants as they appeared in the common pleas court.)

While the original petition included a prayer for money damages, the single issue now presented in this court is whether or not the plaintiff is entitled to a permanent injunction as prayed for.

The common pleas court found in favor of the defendants and the case is here on appeal "de novo" on questions of law and fact.

By agreement of the parties the case is tried in this court upon the transcript of the testimony in common pleas court, the exhibits and certain stipulations.

The record discloses that the name "Pickwick" so far as it relates to this controversy was first used on Feb. 1, 1934, by Clover Coffee Shoppes Inc., at 53-55-57-59-61 Superior Arcade, Cleveland, Ohio. The president of Clover Coffee Shoppes Inc., is George J. Jacobs who owns 86% of its stock. He is also the president of the plaintiff corporation and the owner of 97% of its stock. He testified that "the entire environment in that restaurant (Superior Arcade) was created and evolved around the "Pickwick Papers" and that the murals on the walls all had to do with characters from the "Pickwick Papers" and the various activities of "Old Man Pickwick" and that the cost of remodeling was approximately $35,000.00; a neon sign prominently displayed in front of the restaurant bore the legend "The Pickwick Restaurant;" the name "Pickwick" appeared in newspaper advertising for a period of about two years; on the menu cards used in the restaurant; on the napkins; on the uniforms of the waitresses and on all literature passed out to customers as a means of advertising the trade name.

This restaurant which was operated as a cafeteria served from eight hundred to nine hundred persons each day for lunch and evening meals.

The Clover Coffee Shoppes Inc., operated at this location from Feb. 1, 1934 to about Feb. 1941, a period of approximately seven years during which time it continued to use the trade name "Pickwick." The lease of the Arcade premises having expired and negotiations for the renewal of the lease having failed, a new lease was secured a short distance away in downtown Cleveland at 238 Superior Avenue, in the name of a new corporation organized by said George J. Jacobs under the name of Cloverleaf Restaurants Inc., the plaintiff in this case.

The record further shows that the plaintiff corporation purchased the furniture, fixtures, good will and right to the use of the name "Pickwick" from the Clover Coffee Shoppes Inc.

The minutes of a special meeting of the Board of Directors of the Cloverleaf Restaurants Inc., held at the office of the company on Jan. 6, 1941, are in part as follows:

"Meeting was called to order by the president who stated that he was seeking the authority of the board of directors to purchase the furniture, fixtures and equipment of the 'Pickwick Restaurant' unit of Clover Coffee Shoppes Inc., together with the right to use the name 'Pickwick Restaurant' and especially the word 'Pickwick.' Whereupon Mr. Ammerman moved the adoption of the following resolution:

"Resolved that the president be and he is hereby authorized to purchase the furniture, fixtures and equipment of 'The Pickwick Restaurant' unit of Clover Coffee Shoppes Inc., together with the right to use the name 'The Pickwick Restuarant' and especially the word 'Pickwick' for such price and upon such terms of credit or otherwise as the president shall deem for the best interests of the corporation.

"Said motion was seconded unanimously and carried."

The premises now occupied by the plaintiff at 238 Superior Avenue were remodeled and the restaurant opened April 5, 1941, at a cost of approximately $33,000.00. The evidence shows that the name "Pickwick" was placed in large lettering above the door of the restaurant while the work of remodeling was in process. The evidence also shows that upon completion of the remodeling a number of other signs were placed in front of plaintiff's restaurant, all bearing the name "Pickwick" and that the plaintiff continued operations under the name "Pickwick" and has continued to do so up to the present time. The same neon sign bearing the words "The Pickwick Restaurant" which had appeared in front of the restaurant in the Superior Arcade, was removed therefrom and installed in front of the new restaurant on Superior Avenue after some delay due to labor difficulties.

The record shows that considerable confusion resulted from the use of the same trade name by the respective parties. Witnesses testified that they had patronized the defendants believing they were patronizing the plaintiff. Other evidence of confusion is disclosed by the record such as the delivery of liquor to plaintiff's restaurant intended for the defendants. A particular delivery was made at the noon hour at a time when a religious convention was in the city, which according to plaintiff's witnesses, caused considerable embarrassment because plaintiff was catering to this clientele which did not desire to patronize a restaurant where liquor was sold.

There is testimony concerning the delivery of "cocktail mix" to plaintiff by mistake, intended for the defendants. There is considerable testimony concerning telephone calls to plaintiff intended for defendants or employees of defendants; testimony concerning credit inquiries and other inquiries by telephone all of which required time and attention in explanations by plaintiff. Testimony of officers and employees was introduced concerning patrons coming to plaintiff's restaurant asking for liquor, saying that it was served at "your West Side place, why don't you here?" A newspaper clipping of Nov. 1, 1944, contains an article in which operation and ownership of the Pickwick Restaurant on Superior Avenue is attributed to the defendants. Following this, an article was printed by way of correction at the instance of the plaintiff. Another newspaper article is in evidence concerning a settlement made by the defendants with O. P. A. for beer and liquor overcharges in the sum of $2,447.00 under the name of Pickwick Restaurant all of which caused embarrassment to plaintiff, according to the testimony of its president and others. They testified in substance that after this incident a number of people said "Well, they are finally catching up with you."

The defendants first used the name "Pickwick" on Nov. 7, 1939, when they opened their tavern at 11633 Clifton Blvd., a distance of approximately four miles from the location of plaintiff's restaurant on Superior Avenue. This business was first operated in a single store room but some time in 1941 defendants enlarged their place of business by leasing an adjoining storeroom. At this time defendants' lessor changed the architectural design of the front of the building occupied by defendants. The effect was to give defendants' place of business an appearance architecturally similar to the place of business of plaintiff. At the same time the lettering on the panel in front of and above defendants' place of business was changed to read as follows:

"LOUNGE     THE PICKWICK     BAR."

The evidence shows that the defendants sell food and liquor at this location seven days a week and that they remain open until 2:30 in the morning.

When the defendant, Charles Lenihan, was asked how he happened to select the name "Pickwick" he answered:

"Well, I am quite familiar with it in the Boston area and the east, there is quite a few 'Pickwicks' up there. It is quite

naturally Early American to me; Personally I like 'Pickwick Ale.' Always had it when up east. It is a Boston product. We were looking for some name that would naturally conform with the early American architecture of the design and 'Pickwick' more or less stuck to our fancy and we used the name 'Pickwick.'

"Commencing in February, 1944, the defendants ran a series of advertisements in the entertainment and amusement sections of the Cleveland daily newspapers, designating their place of business as 'The Pickwick,' Clifton Boulevard and W. 117th Street. Some advertisements contained the words 'Best of foods and liquors.' "

The testimony of plaintiff's president is to the effect that he first learned of defendants' use of the name "Pickwick" in September, 1942; that thereupon he communicated with the defendant, Charles Lenihan, by telephone requesting him to discontinue such use, to which defendant made an evasive answer; that thereafter he made other complaints and protests which failed of satisfactory results; that thereafter he employed counsel in the fall of 1942 who gave formal written notice to defendants of the plaintiff's objections; that when these and other efforts of counsel were unsuccessful, plaintiff brought this action. The record in this case is voluminous and there are other facts of minor importance but we consider the foregoing to be the salient facts of the case.

The question before the court is whether or not the plaintiff is entitled to injunctive relief in a court of equity.

It is our view that the record presents certain elements of fact which considered together constitute a clear case of unfair competition which entitles the plaintiff to the equitable relief of injunction, there being no adequate remedy at law. These elements are:

First: **A distinctive trade name.**

Commenting on this proposition, the record shows that "Pickwick" is a distinctive name. It was not haphazardly selected as a trade name by plaintiff but through design of the architect based upon the famous, amusing and entertaining "Pickwick Papers" by Charles Dickens which were first published in England in 1836, depicting contemporary London life. Undoubtedly the name "Pickwick" used in America stems from the original publications of these papers.

Second: **Priority of appropriation.**

In connection with this fact, the record shows appropriation and use of the trade name by plaintiff's predecessor in

1934, at least five years before the use thereof by defendants. We think that plaintiff's predecessor acquired a property right by reason of prior appropriation and use and that there was a valid transfer of this right from the original corporation to the plaintiff corporation. The fact that the same person was president and principal stockholder of both seller and purchaser corporations does not weaken, but if it has any effect, strengthens the right to the use because of the personalized character of the respective corporations.

Third: **A substantial investment by plaintiff and plaintiff's predecessor in title with long and continuous use.**

It is sufficient to note that the record shows a total investment in remodeling both restaurants of approximately $68,000.00. This fact, coupled with continuous investments in advertising the trade name and with long and continuous user, plus prior appropriation, establishes a substantial good will value.

Fourth: **Usurpation by defendants.**

The record is clear that five years after the appropriation of the trade name by plaintiff's predecessor in title, the defendants commenced the use of this name. It is true that there was testimony to the effect that they copied the name from the Boston area but we think this hardly gives a right to use it in this area, in the face of prior appropriation.

Fifth: **Competition in the same kind of business.**

There can be no question but that both parties are engaged in the business of serving food to the public by whatever name designated. The entire business of plaintiff is the serving of food and a substantial part of the business of the defendants is also serving of food. Plaintiff calls its place of business a restaurant; the defendants call their place of business a "tavern." The defendants sell liquor and the plaintiff does not. The hours of business are different in the respect that the defendants remain open later at night. We think these differences are not material in respect of the principal issue involved herein.

Sixth: **Competition in the same business area.**

The record shows that the parties are engaged in business in the same business region in a populous metropolitan area within four miles of each other.

Seventh: **Resultant confusion in public mind.**

The record shows numerous incidents of confusion in the mind of the public resulting from the dual use of this name The newspaper items alone are sufficient to establish this fact, in addition to the many individual other instances of mistaken identity.

The case and text authorities hold generally that in cases of unfair competition, the facts and circumstances of each case are all important. It is difficult to find any two cases precisely alike factually, but the principles of law are well established in the numerous reported cases on the subject of trade marks, trade names, unfair competition and the many text authorities treating these questions. It may be generally stated that protection will be granted by courts of equity to the owner of a trade mark, a trade name, or other indicia adopted for the purpose of giving a distinctive name quality to a business or business products. Such insignia tend to build up business good will which is a most valuable asset in any business enterprise. While competition may be unlimited in respect to prices, wares and merchandise the law does not permit the palming off by one person of his goods as the goods and wares of another person by imitative devices, or designs of any kind which have a tendency to deceive and mislead the public. These and similar doctrines have their foundation in principles of natural law, justice, business morality and integrity, without which our business and social fabric can have no stable and enduring quality.

These conclusions on the law and the evidence are in accord with the great weight of authority in Ohio and the United States. The law in Ohio and elsewhere has been so well settled that little can be gained by an extended discussion of the principles set forth in the cases and text authorities. But for support of these conclusions see:

39 O. Jur. 393 et seq. §§51-52-53 et seq. under heading, "Unfair Competition" and cases therein cited.

Cleveland Opera Co. v Cleveland Civic Opera Association, 22 Oh Ap 400.

Marshall Drug Co. v Uberstine-Fraiberg Drug Co., 28 O. N. P. (N. S.) 412 (Common Pleas Court Cuyahoga Co. 1931).

Hugo Stein Cloak Co., appellant, v S. B. Stein & Sons, Inc., appellee, 58 Oh Ap 377.

52 Amer. Juris. pages 562 et seq. §§86-87 et seq.

Rogers on Good Will, Trademarks & Unfair Trading, pages 127-128, 229-234.

Nims on Unfair Competition (3rd Ed.) pages 802-903-904.

Hopkins on Trademarks, Trade Names and Unfair Competition, page 28.

American Tobacco Co. v Polaczek, 170 F. 117-121, C. C. So. Dist. N. Y. 1909.

Baltimore Bedding Corp. v. Moses et al, 59 U. S. P. Q. 405 480 (Dist. Ct. W. D. Ky.) Louisville, Div. A. D. 1943.

Keith George & Co. v Greenberg, 60 U. S. P. Q. 149-150 (New Jersey Chancery Ct.), 134 N. J. Eq. 182, 34 A. (2d) 639.

Louisville Taxicab & Transfer Co., etc., v Yellow Cab Transit Co., 60 U. S. P. Q. 480 (Dist. Ct. W. D. Ky, Louisville Div. A. D. 1943).

Standard Oil Co. of New Mexico v Standard Oil Co. of Calif., 56 F. (2d) 973—C. C. A. 10th (A. D. 1932).

C. H. Mumm Champagne et al v Eastern Wine Corp., 61 U. S. P. Q. 337 (C. C. A. 2d) Apr. 1944.

Baltimore Bedding Corp. v Moses et al, 59 U. S. P. Q. 405 (Maryland Court of App.) A. D. 1943.

Counsel for defendants apparently does not challenge the principles of law enunciated by these authorities but argues their inapplicability to the facts of the instant case. As previously indicated the evidence as shown by the record appears to us to be so overwhelmingly in favor of plaintiff's contention as to require no further discussion upon this point.

The second defense relied upon appears to be that of laches. In support of this argument, defendants cite and quote from the case of Witt v McLaren Products Co. (25 N. P. (N. S.) 1955). An examination of the facts in that case discloses that the parties were engaged in the manufacture of goods of the same class in states widely separated, who acted independently of each other and in good faith used the same trade mark in building up a trade in the respective territories. The court stated in substance that long delay in commencing suit for enfringement of the trade mark in such a situation, with knowledge of such infringement and great expenditure constituted laches. We find no analogy between the facts of that case and the instant case.

From the record in this case it appears that reasonable diligence was exercised as soon as the usurpation was discovered by the plaintiff. This was after the defendants had enlarged their business and the architectural design of their business had been changed and the name "Pickwick" prominently displayed. From the record it appears that the president of plaintiff corporation, acting at first independently and then through counsel, exhibited a certain degree of reasonableness and courtesy in order to induce defendants to cease the use of the name without suit. It appears that when all reasonable efforts failed that suit was brought. This is not laches.

Mere delay in filing suit is not a defense, especially where the parties are engaged in discussions looking to a settlement without suit. The record shows no acquiescence by plaintiff which would defeat its rights. For authority on this point see the cases of:

Menendez v Holt, 128 U. S. 513-24, 32 L. Ed. 526-528.

Ansenl v Williams, 267 Fed. 9, p. 14 (C. C. A. 8th) A. D. 1920.

Matzger v Vinikow, 17 Fed. (2d) 581 p. 583 (C. C. A. 9th) A. D. 1927.

Cited in plaintiff's brief.

See also:

Nims on Unfair Competition, Sec. 409 p. 1017 et seq.

**39 O. Jur., §§ 90-91-92, pages 425 et seq.**

52 Amer. Juris., §156-157, pages 633 et seq.

Holding these views it follows that a decree for injunction should be allowed as prayed for.

Decree for plaintiff, enjoining the defendants from the use of the word "Pickwick" as a trade name. Order See Journal.

SKEEL, PJ, and MORGAN, J, concur.