**CLOVERLEAF RESTAURANTS, INC., Plaintiff-Appellant, v LENIHAN, ET AL, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20328.   Decided June 20, 1947.

Robb & Robb, Cleveland, Friebolin & Byers, Cleveland, for plaintiff-appellant.

B. H. Schulist, Cleveland, Donald M. Marshman, Cleveland, for defendant-appellee.

## OPINION

By HURD, PJ.

This is an original proceeding in contempt, commenced in this court for violation of an injunction heretofore issued by this court. The history of the case and the facts which are not in dispute are substantially and briefly as follows:

This cause originated in the Court of Common Pleas and was heard on appeal in this court de novo on questions of law and fact. This Court of Appeals in rendering final judgment on January 23, 1947, ordered and decreed as follows:

"That the said defendant appellees, Charles L. Lenihan and Gloria S. Lenihan, shall forthwith cease to use the trade name 'Pickwick' in connection with their business of purveying food, liquor or other refreshments in the conduct of the business heretofore and now conducted by them or either of them at 11633 Clifton Boulevard, Cleveland, Ohio. The said defendants-appellees are permanently enjoined and restained from the use of the trade name 'Pickwick' upon any sign or in any advertisement or other printed matter or upon any tableware or furnishings, or upon any napery or uniforms, or in any other way in their conduct of the said business in the City of Cleveland and its environs so long as the plaintiff-appellant, Cloverleaf Restaurant Inc., or the successor in title to such trade name 'Pickwick' shall continue to use the same in any food, liquor or other refreshment purveying business in such territory."

(For opinion dated December 30, 1946, see 72 N. E. Rep. (2d) 761, and 47 Abs 545.)

Thereafter, on February 10, 1947, a motion for new trial filed in this court was overruled. Thereupon counsel for the defendants appellees made application to the Supreme Court of Ohio for an order directing the Court of Appeals to certify its record to the Supreme Court. This application was denied by the Supreme Court on April 30, 1947 and a certificate of said entry was filed with the Clerk of this Court on May 19, 1947.

On June 6, 1947, a motion was filed by the plaintiff appellant for an order requiring the defendant appellees to show

cause why they should not be punished for contempt for wilful and deliberate violation of the injunction and order rendered against them by this court. This motion was supported by positive affidavits to the effect that the defendants appellees were still continuing the use of the name 'Pickwick' up to the date of the hearing which was had on June 16, 1947.

At the hearing the defendants appellees admitted the continued use of the name as set forth in said affidavits, but claimed that they were doing so as a matter of right under and by virtue of a certain paper writing denominated "Assignment" which was proffered in evidence as Defendants' Exhibit 1.

Objection was made by plaintiff appellant to the introduction of proffered Exhibit 1. The court reserved ruling and now in passing upon the objection, overrules the same and admits Exhibit 1 in evidence, a copy of which is as follows:

"For and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, we, Charles William Brais and Charlotte Brais, husband and wife, residing at Number 161 West Street, Berea, Ohio, and being the owners and operators of the Pickwick Restaurant located at number 11616 Detroit Avenue, Cleveland, Ohio, from 1923 to 1926, inclusive, for ourselves, our heirs, our executors and administrators and our assigns, do by these presents give, grant, set over, transfer and assign unto Charles L. Lenihan and Gloria S. Lenihan, husband and wife doing business as The Pickwick at Number 11631-33 Clifton Boulevard, Cleveland, Ohio, all our right, title and interest in and to the trade name Pickwick and its use in the City of Cleveland, Ohio, and its environs, which trade name Pickwick was adopted and used by us in connection with our restaurant business as aforesaid.

"In witness whereof we have hereunto set our hands at Berea, Ohio, this fifteenth day of May A. D. 1947.

Charles William Brais<br>Charlotte Brais

"Signed and acknowledged in the presence of:
    "Bernard H. Schulist
    "Donald M. Marshman."

In our opinion the defendants-appellees' claim, that they are now entitled to use the name 'Pickwick' as a matter of right, despite the injunction heretofore issued, is entirely without merit and therefore cannot be sustained by this court.

196

The evidence in the record of the original trial in this case shows that a "Pickwick Restaurant" was located at 11616 Detroit Avenue, City of Cleveland, from 1923 to 1926 inclusive, but there was no evidence in the record showing that said business was carried on after 1926. This court considered that question in its determination of the issues in the original case and concluded from the record that there was an abandonment of the use of that name by said Pickwick·Restaurant at 11616 Detroit Avenue, some time in 1926. That our conclusion was well founded is borne out by the fact that the assignment now in evidence shows that the assignees operated the business of the "Pickwick Restaurant" at 11616 Detroit Avenue only from 1923 to 1926 inclusive.

Applying well settled principles of law it has been held that a trade mark, or trade name, is not the subject of property except in connection with an existing business. Hanover Milling Co. v Metcalf, 240 U. S. 403, 412-414.

No distinction can be made between a trade mark and trade name in respect of the rights acquired in either by usage. Both are held to be of like character and will be protected if violated. Nims on Unfair Competition and Trade Marks Page 17, and cases thereunder cited.

Under heading "Trade-marks, Trade Names," etc., there are a great number of reported cases both State and Federal involving the deceptive use or imitation of corporate or business names or styles by competitors, and the rule applied is the same which the courts apply in connection with trade mark infringements.

"If the use by the defendant of the name complained of is calculated to induce persons to deal with him in the belief that they are dealing with the older institution, unfair competition exists and relief is afforded."

See Rogers on Good Will & Trade Marks etc. page 234. This Court so found in this case.

52 American Jurisprudence, page 564, §86 et seq; also page 512, §11.

The Supreme Court of the United States has held that a trade name or trade mark is not the subject of property except in connection with an existing business. See Hanover Milling Co. v Metcalf, 240 U. S. 403, 412-414; United Drug Co. v Rectanus, 248 U. S. 90.

"In short, the trade mark is treated as merely a protection for the good will and not the subject of property, except in

connection with an existing business. The same rule prevails generally in this country and is recognized in the decisions of this court already cited. See also Appolimaris Co. v Scherer, 27 Fed. Rep. 18-20; Levy v Waitt, 61 Fed. Rep. 468, 471, 475; Congress Spring Co. v High Rock Congress Spring Co., 57 Barb. 526, 551; Weston v Ketcham, 51 How. Pr. 455, 456; Candee v Deere, 54 Ill. 439, 457; Avery & Sons v Meikle, 81 Ky. 73, 86."

Hanover Milling Co. v Metcalf, 240 U. S. 403 (at page 414.)

With respect to the assignment of trade names and trade marks, the law is that a trade name or trade mark is not by itself such property as can be transferred and the right to use it cannot be assigned except as incidental to the transfer of the business or property in connection with which it has been used. It cannot exist independently of some business in which it is used and an attempted assignment of a naked trade mark disconnected from any business or good will is void. The authorities on this subject are so numerous that a detailed discussion of them would serve no purpose. We cite only a few:

MacMahan Pharmacal Co. v Denver Chemical Mfg. Co., 113 Fed. 468 (C. C. A. 8th Cir. 12-16-01).

President Suspender Co. v Mac William, 238 Fed. 159, 161 (C. C. A. 2d, Cir. 11-14-16).

Grossman v Griggs, 186 Mass. 275, 71 N. E. 560.

Falk v American West Indies Co., 180 N. Y. 445, 73 N. E. 239, 1 L. R. A. (N. S.) 704; 105 A. S. R. 778; 2 Ann. Cases 216.

Lea v New Home Sewing Machine Co., (C. C.) 139 Fed. 732.

Bulte v Igleheart, 137 Fed. 492, 70 C. C. A. 76.

Carroll et al v Duluth Superior Milling Co., 232 Fed. 576, 580-81 (C. C. A. 8th Cr. 3-25-16).

Nims on Unfair Competition & Trade Marks 2nd Ed. 697.

Fries & Fries Co. v Excel Co., Inc., 16 F. (2d) 543 (C. O. A. D. C.).

Nims on Unfair Competition & Trade Marks 2d Ed. 36.

In the instant case the so-called "Assignment" was acquired by the defendants appellees for a nominal consideration of One Dollar ($1.00) twenty-one years after the business had been abandoned by the assignees. Quite obviously the purported Assignment is void, having no effect whatsoever to transfer to defendants appellees any title to the use of the name "Pickwick." Consequently, a claim of right to use the name in the face of the injunction issued by this Court is a clear violation of the injunction, punishable as a contempt of this court.

We believe, before concluding, that we should advert to another proposition implicit on the face of this record and that is that the defendants herein without any application to modify the order of this court and in defiance of the orders of this court proceeded deliberately to violate the injunction issued herein. This course of action by them is contrary to all accepted principles of law. By such a course of conduct the defendants have attempted to set themselves over and above the law. This conduct cannot be countenanced or condoned by this Court.

It should be observed that a full and complete hearing was had. Thereupon a motion for new trial having been overruled, an appeal by means of a motion to certify to the Supreme Court of Ohio was denied. No application was filed for a rehearing in the Supreme Court. Consequently, with the ruling in the Supreme Court there was a finality to the proceedings which should have been observed most scrupulously by defendants.

In a case of nation-wide importance recently decided by the Supreme Court of the United States, it was held that even though the action of the court in the exercise of general jurisdiction of its equity powers, upon pleadings properly invoking its action, be erroneous, nevertheless, the orders of the court must be respected until such time as the decision of the court has been reversed by orderly review in a court of higher jurisdiction. See the late case of United States v United Mine Workers, 67 S. C. Rep. 677. At page 696 the court said:

"Proceeding further, we find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued. In Howat v Kansas 1922, 258 U. S. 181, 189, 190, 42 S. Ct. 277, 280, 281, 66 L. Ed. 550, this court said:

"An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein, and within the jurisdiction must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of the first instance to determine the question of the validity of the law, and until its decision is reversed for error by order-

ly review, either by itself or by a higher court, its orders based on its decision are to be respected and disobedience of them is contempt of its lawful authority, to be punished."

It should be observed in this case that the Supreme Court of Ohio in overruling the motion to certify the record in this case, upheld the validity of the decision of this Court and that therefore it was unquestionably the duty of the defendants to obey the order entered therein.

In the chapter on Contempt, **9 O. Jur., p 140, §75,** under the sub-heading "Injunction" we find the following:

"One statute in Ohio relates specifically to injunctions and the punishment for violation thereof. The court of appeals for Hamilton County held that in proceedings for the punishment of a defendant charged with violating an order of injunction, §§11887 and **11888 GC,** relating to contempt for violation of an injunction, were the proper ones to apply, and not the sections providing for the punishment generally of contempt of court. * * * But the Cuyahoga Court of Appeals sustained a sentence to a county jail for ten days and payment of a fine of $500.00 for violation of an injunction against selling goods in a certain territory. The court here was evidently acting under §12142 GC.

"The assessment of fine for violation of an injunction is an individual matter and the limit of $200.00 applies individually and not collectively; hence where there are several defendants each must respond himself for the wrong done; and where there are seven defendants the aggregate fine of $1,000 is not excessive. Bigger, J., emphatically stated the position of the Ohio courts in 1903, that the court could uphold its lawful orders and maintain its dignity and the supremacy of the law by all means at its command—not that the court would act arbitrarily or had the slightest disposition to inflict greater penalties than were necessary to accomplish observance of its orders; but it must not be thought that the violation of an order of a court charged with the performance of its duty, can be treated as a light matter."

It is the conclusion of this court that the defendants are guilty of contempt of this court in the violation of the injunction entered herein January 23, 1947 and that in the maintenance of law and order and in upholding the dignity of this Court, the defendants must be punished as provided by law.

While we think we are not confined to the provisions of

§11888 GC, but may also proceed under §12142 GC, nevertheless, we have decided to adopt the procedure provided under §11888 GC.

Therefore, sentence 'is imposed upon each defendant with a fine of One Hundred Dollars ($100.00) for the use of the county to make restitution to the plaintiff appellant, and to give further security to obey the injunction, in default of which the defendants will be held in close custody until compliance with the orders of this court, heretofore issued herein, it is ordered accordingly.

MORGAN, J, and SKEEL, J, concur.