JOURNAL ENTRY AND OPINION
Defendant-appellant Catherine Miller, 89 years old and in failing health, claims Judge Nancy Margaret Russo abused her discretion when she entered a $375,000 judgment against her as a sanction for her failure to appear at trial. We agree, reverse and remand.
On February 6, 1996, appellees Anna Marie Barbato and her husband, Raymond Slater, filed a complaint with jury demand against Miller praying for a total of $375,000 for the personal injury and property damage claims of Barbato and the loss of consortium claim of Slater. They alleged that on September 6, 1995, while Barbato was operating a car eastbound on Harvard in Oakwood Village, Miller, operating her car westbound on Harvard, went left of center causing a collision and serious injuries to Barbato. Miller answered, denied negligence and affirmatively pleaded that Barbato was solely negligent or more comparatively negligent; negligence of a third party; substantial intervening superseding cause; and sudden emergency. The case was set for trial on October 7, 1997, but voluntarily dismissed on September 25, 1997 through a Civ.R. 41(A)(1) entry.
The identical complaint was refiled on September 1, 1998, and placed on the docket of Judge Nancy McDonnell, but reassigned to Judge Russo on September 18, 1998, pursuant to Sup.R. 36.
Miller refiled her answer and asserted the same affirmative defenses of intervening superseding cause and sudden emergency as before.[1]
At a case management hearing on December 4, 1998, the judge entered the following order journalized on December 11, 1998:
 Pltf to complete expert discovery on or before 2-5-99 Deft to complete expert discovery on or before 4-5-99. Trial set for 5-10-99. Final pretrial set 4-26-99 at 3:00 p.m. clients, counsel and adjustors, to appear in person at final pretrial 1/2 hr. before trial with full settlement authority. Failure to appear will result in sanctions and/or judgment * * *.
On April 16, 1999, Barbato's lawyer filed a copy of Miller's deposition, taken in the earlier case, and issued a subpoena to her at the Somerset Point Skilled Nursing Facility, commanding her appearance for trial.[2]
In an order journalized April 27, 1999, the judge noted "FPT held. All dates and orders remain in effect."[3]
On April 29, 1999, Miller's lawyer filed a motion to quash the subpoena, asserting that Miller's attendance at trial would cause an "undue burden" to her health. In support of the motion to quash the subpoena was a copy of a March 30, 1999 letter/report from Miller's attending physician, Dr. Charles C. Sevatos, D.O. In pertinent part, the letter stated:
 I have been Ms. Miller's attending physician since September 16, 1995, when she was admitted to Somerset Point Skilled Nursing Facility. Since that time Ms. Miller has been treated for a heart condition including an atrial fibrillation, osteoporosis, pernicious anemia, hypothyroidism, urinary incontinence, and arthritis.
 Ms. Miller is currently being treated with multiple medications for the above noted conditions.
 In addition, Ms. Miller has been treated by an audiologist for her hearing deficits.
 In 1997, Ms. Miller suffered a transient aschemic attack, or a small stroke for which she was hospitalized. A brain waive study, or an EEG[,] was performed at that time which showed a bihemispheric cortical dysfunction.
 Having known Ms. Miller since 1995, it is of concern, in my medical opinion, that the stress and excitement of a trial or being called as a witness may very well exacerbate Ms. Miller's atrial fibrillation or heart problem. The stress could very well increase her heart rate which is the most serious complication of atrial fibrillation. The abnormal heart rhythm at a increased rate can make the patient more susceptible to a stroke or heart attack. I am also concerned that while Ms. Miller on most occasions is neurologically stable and appears to be alert and oriented to person, place and time, I have found her to be emotionally labile as well as to have short term memory deficit.
* * *
 In closing, I feel that it would be detrimental to Ms. Miller's significant medical conditions to go through the stress and tension associated with any litigation. I also would express my concern of her qualifications as any type of witness in a trial as her memory, while at times seems in tact [sic], has shown over time to have some short term deficits with underlying confusion, most likely related to senile or multi infarct dementia arising from her abnormal heart rhythm.
 If any further information is required please do not hesitate to contact me.
Miller's personal lawyer provided an affidavit, through which he verified that he had told Barbato's lawyer as early as March 30, 1999, that Miller's medical conditions prevented her from appearing at trial and had provided a copy of Dr. Sevatos' report to him.
On that same day, Barbato filed a "Notice of Intent to Read Deposition into Evidence Pursuant to Rule 32 of the Ohio Rules of Civil Procedure" stating that, if Miller failed to appear at trial, her October 29, 1996 deposition would be read into the record.
Miller's attorney filed a trial brief on April 30, 1999, and identified two eyewitnesses and two expert witnesses, one of whom would testify about the sudden emergency defense. Barbato's trial brief, filed May 3, listed Miller as a witness "if the court compels her attendance."
Barbato also responded to Miller's Motion to Quash Subpoena, stating that "[w]hile plaintiffs do not necessarily contest defendant's Motion to Quash, plaintiffs do however respectfully request that if this Honorable Court determines that defendant's Motion to Quash is well taken, * * *" they be allowed to read portions of her deposition into the record and introduce the transcript as an exhibit in trial.
By journal entry dated May 5, 1999, a Wednesday, the judge issued the following order:
 [Defendant's] motion to quash subpoena of Catherine Miller is denied. The Court has not received any motion or supporting information alleging the defendant is unable to testify. Defendant ordered to appear for trial, per prior order.
On May 7, 1999, a Friday, Miller's personal lawyer filed a Motion For Reconsideration of the denial in which he referred to Dr. Sevatos' report attached to the original motion to quash and strongly contended that Miller's appearance at trial would endanger her already declining health. In a journal entry dated the same day, the judge issued the following ruling:
 Defendant's motion for reconsideration is denied at this time. As stated in this Ct's 5/4/99 ruling, Ct has not received supporting medical documentation. Ct will reconsider this motion upon receipt of medical documentation (i.e. medical records) and testimony, in person, of a person qualified to testify as to the contents of the medical records and condition of Catherine Eileen Miller on morning of trial, 5/10/99 at 8:30 a.m.
Miller's lawyer received notice of this order by telephone, contacted Dr. Sevastos, explained the situation and requested his appearance in court on Monday. He refused, claiming his patient schedule could not be changed on such short notice.
On Monday, May 10, 1999, both Miller's lawyer and insurance claims adjuster appeared in court at 8:00 a.m., pursuant to the December 11, 1998 order, but no settlement was reached. Miller's lawyer telephoned Dr. Sevastos and again requested his appearance; and again he refused. Dr. Sevastos' lawyer then called and reiterated to Miller's lawyer that the doctor would not appear on such short notice. Miller's lawyer then suggested that the judge could speak to the doctor by telephone in the presence of a court reporter but the judge refused this alternative. Miller's lawyer then advised the judge that she was prepared to try the case and requested that it go forward but the judge advised that she was entering judgment against Miller as a sanction for her failure to appear. No hearing was held or evidence produced on the issues of liability or damages. Judge Russo then entered judgment in favor of Barbato and Salter:
 Trial called in this case per Court's Order; [Defendant] fails to appear; produce attending physician /or medical records re: alleged inability to appear, despite Court's numerous orders. Judgment entered against [Defendant] as and for a sanction as follows: in the amount of $350,000, together with costs in favor of [plaintiff] Anna Marie Barbato; and in the amount of $25,000 against [Defendant] and in favor of [Plaintiff] Ray Slater, together with costs herein.
Miller filed a Motion For Relief From Judgment pursuant to Civ.R. 60(B) and then this appeal.
We will address Miller's assignments of error together:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUMMARILY ENTERED JUDGMENT AS A SANCTION FOR DEFENDANT'S FAILURE TO APPEAR AT TRIAL.
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN, AFTER IT WAS PRESENTED WITH THE UNCONTROVERTED MEDICAL REPORT OF DEFENDANT'S PERSONAL PHYSICIAN, IT REQUIRED THAT THE DEFENDANT APPEAR AT TRIAL, OR IN THE ALTERNATIVE THAT THE PHYSICIAN APPEAR WITH SUPPORTING MEDICAL DOCUMENTATION.
Miller contends: (1) that the sanction was a default judgment and Civ.R. 55 permits a judge to issue a default judgment only in cases where the opponent has failed to plead or otherwise defend the action; (2) that imposing a sanction in the total amount of the prayer for damages was not only the most drastic and outrageous of remedies, it is not authorized under any rule of law; (3) that the judge should have allowed her to proceed with trial and present her defense; and (4) that the judge should have granted her motion to quash based upon her physician's report.
Barbato and Slater assert that the judge did not enter a default judgment; rather, she entered an appropriate sanction against Miller for her contempt in failing to abide by the judge's repeated orders. Moreover, they argue, the only thing Miller submitted to the judge to substantiate her alleged infirmity was an unauthenticated letter from her doctor; she never offered a reasonable alternative to her appearance at trial. They conclude that the judge was completely within the bounds of her authority when she imposed the sanction against Miller.
The judge did not enter a default judgment against Miller. As we noted in Card v. Tatum (May 14, 1998), Cuyahoga App. No. 73678, unreported, "judgment by default is improper where a party has answered." See Civ.R. 55(A). It is black-letter law that "[t]he proper action for a court to take when a defending party who has pleaded fails to show for trial is to require the party seeking relief to proceed ex parte in the opponent's absence." Ohio Valley Radiology Assocs., Inc. v. Ohio ValleyHosp. Assn. (1986), 28 Ohio St.3d 118, 122, 502 N.E.2d 599. In the present case, the judge implicitly found Miller in contempt for violating the order requiring her attendance at trial.
But in what type of contempt was Miller found? R.C. 2705.01
defines direct contempt as "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." Should such a situation occur, the judge may summarily punish the offender without a hearing. When, however, a person is accused of committing indirect contempt of court as defined by R.C. 2705.02, "a charge in writing shall be filed with the clerk of court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." R.C. 2705.03; see, R.C. 2705.05(A). Indirect contempt may occur, inter alia, by "[d]isobedience of, or resistance to, a lawful writ, process, order rule, judgment, or command of a court or an officer," or by "[a] failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required." R.C. 2705.02(A), (C); see Civ.R. 45(E).
As a general rule, "unless it is void, an order must be obeyed until it is set aside by orderly and proper proceedings," and a person may be found in contempt for violating that order.Arthur Young Co. v. Kelly (1990), 68 Ohio App.3d 287,295, 588 N.E.2d 233, citing State ex rel. Beil v. Dota
(1958), 168 Ohio St. 315, 154 N.E.2d 634; CloverleafRestaurants, Inc. v. Lenihan (1947), 80 Ohio App. 477,75 N.E.2d 477. However, "[i]mpossibility of compliance [with an order] is an affirmative defense for which the alleged contemnor has the burden of proof." Olmsted Twp. v. Riolo (1988),49 Ohio App.3d 114, 117, 550 N.E.2d 507, citing Smedley v.State (1916), 95 Ohio St. 141, 143, 115 N.E. 1022, 1023.
If Miller's alleged disobedience was a violation of the judge's order, it would constitute indirect contempt which is subject to a charge in writing and a hearing before the imposition of sanctions. Because the judge entered judgment and sanctions summarily, and did not afford Miller a hearing, the judgment and sanctions should be reversed and the matter remanded for a separate hearing. But this finding does not conclude the appeal.
We address whether the judge abused her judicial discretion when she denied Miller's motion to quash Barbato's subpoena and, thereafter, mandated that Miller, or later, that her physician, appear for trial. "`"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations."'" Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, quotingState v. Jenkins (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313, quoting Spalding v. Spalding
(1959), 355 Mich. 382, 384-385, 94 N.W.2d 810, 811-812. To abuse that choice, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias."Nakoff, 75 Ohio St.3d at 256.
Pursuant to Civ.R. 45(C)(1), "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." However, upon "timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production * * * if the subpoena * * * [s]ubjects a person to undue burden." Civ.R. 45(C)(3)(d). Subdivision (C)(5) further provides:
 If a motion is made under division (C)(3)(c) or (C)(3)(d) of this rule, the court shall quash or modify the subpoena unless the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated.
It is painfully obvious from Miller's motion to quash, the medical report and subsequent affidavit, her appearance at trial would exacerbate her already deteriorated condition in such a way as to make her "more susceptible to a stroke or heart attack." When a party is in ill health, the probability of severe physical injury or death resulting from appearing at trial is an "undue burden" under Civ.R. 45(C)(3)(d). A judge must quash or modify the subpoena unless the person issuing the subpoena "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship." Civ.R. 45(C)(5). Barbato clearly and unambiguously did not contest the motion to quash and was quite willing to use Miller's deposition transcript at trial. Because Miller presented evidence of "undue burden" and Barbato did not show a substantial need for her testimony under Civ.R. 45(C)(5), we find the judge's continued disregard of Dr. Sevatos' medical report, and demand that Miller's physician testify regarding her infirmity to be an abuse of discretion.[4] The judge erred when she denied the motion to quash.
But the judge did not impose sanctions for Miller's failure to obey a subpoena, rather it was expressly for violations of her orders. Loc.R. 21 Part III(H)(2) provides:
 (H) Any judge presiding at a pretrial conference or trial shall have authority:
 (2) After notice, order the plaintiff to proceed the case and decide and determine all matters ex-parte upon failure of the defendant to appear in person or by counsel any pretrial or trial, as required by Part III(B) of this Rule.
Loc.R. 21, adopted by the common pleas judges, governs the practice and procedures in the general division, and cannot to be ignored or abrogated by an individual judge's particular rule or order. Bognar v. Quarries Co. (1966), 7 Ohio App.2d 187,219 N.E.2d 827. Because nothing within the rule permits a judge to impose any sanction should an attorney appear for trial without his client, a Draconian order requiring a party's presence for trial is contrary to both the letter and spirit of the local rule and Civ.R. 39.
While a judge has discretion in maintaining and controlling his docket and may impose sanctions for violation of proper orders, he does not have the authority to find a party in contempt for failing to obey an invalid order. Miller's attorney was present and prepared for trial. It was error to hold Miller in contempt and impose any sanction for failing to appear. Miller's assignments of error are well taken.
In accordance with the foregoing opinion, the judgment is reversed and remanded.
It is ordered that the appellant recover from the appellees her costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ ANNE L. KILBANE, JUDGE
 PATRICIA ANN BLACKMON, J., CONCUR:
TERRENCE O'DONNELL, P.J. CONCURRING IN JUDGMENT ONLY.
[1] By affidavit Miller claims that, while westbound on Harvard in a westbound lane and prior to the collision she sustained an unpredictable stroke and a sudden and unexpected blackout.
[2] Miller has lived at this facility since her discharge from Meridia Hillcrest where she was hospitalized on September 6, 1995.
[3] Apparently Miller was not present at this final pretrial but no contempt was found.
[4] In Card v. Tatum (May 14, 1998), Cuyahoga App. No. 73578, unreported, we found an abuse of discretion when the judge denied the defendant's motion for a continuance of a settlement conference when the defendant had produced a doctor's note indicating that she could not travel from Florida to Cleveland due to the nature of her condition and the possibility of surgery. We concluded that the doctor's note constituted "sufficient documentation" to support her motion.